UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN HUGHEY and JESSICA HUGHEY,<br><br>Plaintiffs,<br><br>v.<br><br>DAN DRUMMOND, THOMAS McDONALD, WEST SACRAMENTO POLICE DEPARTMENT, CITY OF WEST SACRAMENTO, CHRISTOPHER WRIGHT, KENNETH FELLOWS, TOD SOCKMAN, GERRIT MARKUS, TRENT TYLER, TOM MAGGIANO, NATHAN STEELE, DAVID DELAINI, and DOES 1 through 20,<br><br>Defendants. | No. 2:14-cv-00037-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendants Dan Drummond's ("Drummond"), Thomas McDonald's ("McDonald"), West Sacramento Police Department's ("WSPD"), City of West Sacramento's ("the City"), Christopher Wright's ("Wright")[1], Kenneth Fellows' ("Fellows"), Tod Sockman's ("Sockman"), Gerrit Markus' ("Markus"), Trent Tyler's ("Tyler"), Tom Maggiano's ("Maggiano"), Nathan Steele's ("Steele"), and David Delaini's ("Delaini") (collectively "Defendants") motion to dismiss Plaintiffs Kevin and Jessica Hughey's ("Plaintiffs") complaint. (ECF Nos. 1, 19.) For the reasons set forth below, Defendants' motion is GRANTED in part and

---

[1] All Defendants but Officer Wright filed a joint motion to dismiss on February 25, 2014. (ECF No. 19.) On February 27, 2014, Wright requested to join that motion to dismiss. (ECF No. 21.) Plaintiffs opposed joinder. (ECF No. 22.) In the interests of judicial economy, the Court joins Wright to the other Defendant's motion to dismiss, for the instant motion only. Wright is directed to request joinder with respect to future motions, should that be his intent.

DENIED in part, with leave for Plaintiffs to amend.

**I.     Factual Allegations**

A. <u>July 9, 2012</u>

On July 9, 2012, in response to a 9-1-1 call regarding a domestic disturbance, WSPD dispatched officers Wright and Markus to Plaintiffs' residence.[2] The officers parked their police cruisers in the alley behind Plaintiffs' residence. Upon arrival, Wright approached the front of the residence while Markus remained in the alleyway. At the time, Plaintiffs were discussing issues concerning their relationship. Wright banged on and attempted to kick in Plaintiffs' front door. After three or four kicks, Wright identified himself as a police officer. Mrs. Hughey attempted to unlock the door, but was unable to grip the deadbolt. Mr. Hughey moved her aside, and unsuccessfully attempted to unlock the door himself. The door swung upon and Mr. Hughey stepped back into the entryway of his home. When Plaintiffs first saw Wright, he was standing with another officer and had drawn his service weapon. Wright shot Mr. Hughey in the abdomen immediately after kicking in the front door, and Mr. Hughey stumbled backward. Wright ordered Plaintiffs to the floor. Officers then pinned down Mr. Hughey and put him in handcuffs before transporting him to the hospital. Officer Markus had approached the front of Plaintiffs' residence in time to see the muzzle flash from Wright's handgun. Markus asked Wright what prompted the shooting, and Wright replied that Mr. Hughey had reached for his weapon. (ECF No. 1 ¶¶ 10–18.)

Mrs. Hughey's three-year-old son was upstairs in bed at the time of the shooting. After Mr. Hughey was taken to the hospital, Mrs. Hughey went upstairs to check on her son. Officers then separated Mrs. Hughey from the boy and requested a statement before she was allowed to see her son again. Mrs. Hughey gave a statement. Mrs. Hughey was also roughly nine months pregnant at the time of the shooting. The shooting caused her to have contractions. At another point later in the evening, while Mrs. Hughey's mother was also present, an officer stated to Mrs. Hughey that Mr. Hughey had attacked a police officer. Mrs. Hughey denied that Mr. Hughey had

---

[2] The factual allegations in this section are taken from the complaint. For the purposes of a motion to dismiss, the factual allegations in the complaint are accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

1  done this.  (ECF No. 1 ¶ 22–23.)

2  Later that evening WSPD officers, including Detective Fellows, interviewed several of Plaintiffs' neighbors.³  At some point, WSPD officers and the WSPD Crime Scene Investigations Unit also gathered evidence from the scene.  It was later determined that Mr. Hughey's fingerprints were not on Wright's firearm; there was no gunpowder residue on Mr. Hughey; none of Wright's DNA was found on Mr. Hughey and none of Mr. Hughey's DNA was found on Wright; blood spatter was located at distance of six feet within the home; and there was a broken lock on the ground.  An audio file from Markus was obtained, which reveals that Wright discharged his firearm while shouting.  At some point, without a warrant, WSPD seized Mr. and Mrs. Hughey's laptop computers and Mr. Hughey's smartphone.  (ECF No. 1 ¶¶ 24, 27, 29.)

   B.  <u>July 10, 2012 – July 16, 2012</u>

At the hospital, Mr. Hughey underwent surgery, but physicians opted not to remove the bullet because it was resting too close to his spinal cord.  At approximately 5:00 AM on July 10, 2012, Mr. Hughey was transferred to the intensive care unit (ICU) where he was served a restraining order.  At approximately 9:00 AM, WSPD refused Mr. Hughey's attorney's access to his hospital room, but later permitted him access with an officer present.  When Mr. Hughey's attorney returned at 2:15 PM, he was again refused access.  WSPD refused to provide information regarding Mr. Hughey's medical condition to his family.  WSPD also disclosed to media sources, including the Sacramento Bee, KCRA, and the News-Ledger, that an officer had shot a man who was reaching for the officer's gun.  As of the filing date of the instant complaint, WSPD has not taken steps to correct or supplement this information.  (ECF No. 1 ¶¶ 30–36.)

At approximately 2:00 AM on July 11, 2012, officers shackled Mr. Hughey to his hospital bed and removed the phone from his room.  At approximately 9:00 AM, Mr. Hughey's attorney spoke with Officers Sockman and Grillat, and requested the return of Mr. Hughey's smartphone and laptop.  Sockman and Grillat acknowledged that these items were seized without a warrant,

---

³ Plaintiffs allege Fellows was the lead detective in charge of investigating the July 9, 2012, altercation.  Plaintiffs allege Fellows has a history of improper investigative tactics and using excessive force.  Plaintiffs state the WSPD has an institutionalized history of negligent hiring practices and failing to investigate allegations of police excessive force.  (ECF No. 1 ¶¶ 52–57, 65–69, 77–80.

3

1    but did not return them.  From 12:00 PM to 1:45 PM that day, Mr. Hughey met with his attorney.
2    Also on July 11, 2012, his attorney filed a government claim against WSPD and the City of West
3    Sacramento regarding the shooting.  Mrs. Hughey and Mr. Hughey's mother were denied access
4    to his room; his attorney was informed that there was a "black out" on Mr. Hughey, and the
5    hospital would not provide information to anyone about his location or status.  After Mr.
6    Hughey's attorney left, four WSPD officers placed Mr. Hughey under arrest and served him with
7    a search warrant.  They also had Mr. Hughey remove his clothes and photographed his injuries.
8    Later that evening, Mr. Hughey suffered cardiac shock and received treatment.  (ECF No. 1 ¶¶
9    26, 37–43.)

10      On July 12, 2012, WSPD detectives, including Fellows, visited Mrs. Hughey's parents'
11   home in Placerville, California, where Mrs. Hughey was staying.  Fellows sought to interview
12   Mrs. Hughey regarding the shooting, but she and her family refused his request.  (ECF No. 1 ¶¶
13   44.)

14      On July 13, 2013, after his attorney posted bail with the Yolo County Superior Court, Mr.
15   Hughey was uncuffed from his hospital bed and permitted to see his family.  He remained at the
16   hospital.  At approximately 10:00 PM that evening, Mrs. Hughey was admitted to a hospital in
17   Placerville to deliver Plaintiffs' child.  Their son was born at 1:37 AM the next day, July 14,
18   2012, but Mr. Hughey was not present.  Mr. Hughey was discharged from the hospital on July 16,
19   2012.  (ECF No. 1 ¶¶ 45–48.)

20     C.  <u>August 2012 – December 2013</u>

21      On or about August 8, 2012, Fellows attempted to contact Mrs. Hughey by phone.  When
22   she did not answer his call, Fellows contacted Mrs. Hughey's mother, claiming that he had
23   discovered illegal content on Mrs. Hughey's laptop computer.  Fellows knew that Mrs. Hughey
24   had concerns about the impact of the shooting on the custody of her son, because she had
25   expressed those concerns in her statement to Fellows at Plaintiffs' home on July 9, 2012.  When
26   he visited her parents' home in Placerville on July 12, 2012, Fellows told Mrs. Hughey's father
27   that he did not want to exacerbate any issues regarding child custody and that WSPD would
28   refrain from contacting her ex-husband.  During an unspecified time period, Fellows repeatedly

contacted Mrs. Hughey's ex-husband, disclosing confidential information regarding Plaintiffs that WSPD obtained during its investigation of the shooting. Mrs. Hughey eventually lost custody of her three-year old son due to this disclosure. (ECF No. 1 ¶¶ 52 – 57.)

The Yolo County district attorney eventually brought felony charges against Mr. Hughey in connection with the events of July 9, 2012. Wright and Markus were subpoenaed to appear at a preliminary hearing on March 25, 2013, but they did not appear. Instead, Fellows recited a statement from Wright that Fellows had previously obtained, which falsely depicted the events of July 9, 2012. Officer Tyler also testified falsely that he had observed Mr. Hughey outside Plaintiffs' home with Wright, and that Mr. Hughey had stepped backward into the residence after Wright shot him. (ECF No. 1 ¶¶ 59–61.)

Officers Steele, Delaini, and other WSPD officials intentionally delayed in carrying out WSPD's investigation of the shooting. While the investigation was ongoing, WSPD supervisors "looked the other way" and permitted Wright to remain on active duty. WSPD intentionally did not request assistance from the Sacramento Police Department, even though doing so would have expedited the investigation. Plaintiffs made numerous public records act requests and filed two petitions for writs of mandate to compel disclosure regarding the investigation and prior claims against Fellows from the City of West Sacramento and the WSPD. As of the filing date of the instant complaint, WSPD has failed to produce Wright's audio recording from the night of July 9, 2012. WSPD has stated that Wright failed to activate his audio device. WSPD has failed to produce other exculpatory evidence. (ECF No. 1 ¶¶ 65–87.)

On April 17, 2013, WSPD terminated Wright's employment. On May 10, 2013, Delaini issued a formal determination that Wright acted with excessive force when he shot Mr. Hughey. WSPD did not conclude its investigation into Wright's conduct, and on May 23, 2013, Delaini referred the matter to the district attorney for criminal investigation. That investigation is still open. (ECF No. 1 ¶¶ 70, 81–82.)

After he continued to experience pain due to the shooting, Mr. Hughey opted for surgery on October 26, 2013, to remove the bullet from his back. The bullet was removed, but Mr. Hughey developed an infection requiring a second surgery on October 29, 2013. On December 4,

2013, the Yolo County Superior Court dismissed the criminal charges against Mr. Hughey stemming from the July 9 incident, with prejudice. (ECF No. 1 ¶¶ 62–64, 88.)

## II.     Procedural History

On January 7, 2014, Plaintiffs' filed their complaint in the instant action. (ECF No. 1.) On February 25, 2014, Drummond, McDonald, WSPD, the City, Fellows, Sockman, Markus, Tyler, Maggiano, Steele, and Selaini moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6). (ECF No. 19.) On February 27, 2014, Wright requested to join in the other Defendants' motion. (ECF No. 21.) Plaintiffs opposed Wright's joinder motion.[4] (ECF No. 22.) Plaintiffs also filed an opposition to the other Defendants' motion to dismiss, and those Defendants filed a reply to that opposition. (ECF Nos. 27, 29.)

## III.    Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

---

[4] The Court GRANTS Wright's joinder motion (*see* footnote 1, *supra*).

elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**IV.   Analysis**

The complaint brings twenty-seven causes of action. Plaintiffs seek compensatory, general, punitive and special damages, attorneys' fees, costs, and prejudgment interest. Defendants move to dismiss Plaintiffs' complaint in full on the basis that it does not specifically state which causes of action are alleged against which defendant and which facts support each legal theory (i.e. "shotgun" pleading) and hence does not comport with Fed. R. Civ. Pro. pleading requirements. (ECF No. 19-1 at 4–6.) Defendants also move separately to dismiss claim 4, alleging gross recklessness; claim 24, alleging spoliation and fabrication of evidence; and claim 25, alleging a § 1983 violation under the 8th Amendment of the U.S. Constitution.[5] The Court finds that the complaint warrants dismissal based on Defendants' arguments regarding shotgun pleading. For clarity going forward, the Court also addresses the other arguments for dismissal.

---

[5] Additionally, Defendants moved for dismissal of claim 22, alleging a violation of 42 U.S.C. § 14141; claim 26, alleging a violation of 42 U.S.C. § 1985; and claim 27, alleging a violation of 42 U.S.C. § 1986. Plaintiffs concede dismissal of claims 22 and 26 (ECF No. 27 at 9, 11.) Therefore, the Court dismisses these claims with prejudice. With respect to claim 27, Plaintiffs do not address Defendant's motion to dismiss in their opposition. Because a viable § 1986 claim is contingent upon a viable § 1985 action, and Plaintiffs concede that they have no action under § 1985, this claim is dismissed with prejudice. *See* § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed … shall be liable ….")

7

A. "Shotgun" pleading

Defendants move to dismiss Plaintiffs' complaint in full because Plaintiffs fail to state which causes of action are alleged against which Defendants and which facts support each legal theory. Defendants assert that, as a practical matter, they cannot identify which immunities or defenses apply to individual defendants. (ECF No. 19 at 4–6.) Plaintiffs respond that the Rule 8 standard does not require the precise delineation of facts and individual defendants that Defendants request. (ECF No. 22 at 4.)

Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim. *See In re Mortgages Ltd.*, No. 2013 WL 1336830, at *12 (Bankr. D. Ariz. March 29, 2013); *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). The instant complaint does both of these things, and hence violates Fed R. Civ. P. 10, requiring that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and Fed. R. Civ. P. 8, requiring that the complaint contain a "short and plain statement" of the entitlement to relief. The complaint does not specify which Defendants are implicated for each of the 27 claims. The complaint also incorporates by reference the 91 paragraphs of factual allegations that precede the claims, without designating which facts underlie which claim. Given the number of Defendants, the number of claims, and the number and complexity of the factual allegations, Defendants cannot adequately prepare a defense without knowing which Defendant faces which allegations. Amending the complaint to rectify this deficiency will facilitate the pleading process, going forward. Therefore the complaint is dismissed with leave to amend.

B. Claim 4: Gross Recklessness

Claim 4 alleges "gross recklessness," which the Court construes as a claim for gross negligence. Defendants move to dismiss on the basis that there is no independent tort of gross negligence.

California courts have disclaimed a cause of action for "gross negligence" as independent of a tort for ordinary negligence. *See Continental Ins. Co. v. American Protection Industries*, 197

1  Cal. App. 3d 322, 329 (1987) ("Do Our Courts Recognize a Cause of Action for "Gross
2  Negligence"? No."); *Rosencrans v. Dover Images*, 192 Cal. App. 4th 1072, 1088 (2011); *City of*
3  *Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 780 (2007).  Plaintiffs reference a number of
4  California statutes that provide liability only upon a showing of gross negligence.  (ECF No. 27 at
5  8.)  *See e.g.* Cal. Bus. & Prof. Code § 2935.5 (immunity not available when on-call licensees
6  committed gross negligence in providing emergency care in emergency rooms); Cal. Bus. & Prof.
7  Code § 2398 (immunity not available when a licensee commits gross negligence in rendering
8  voluntary emergency medical assistance during a community college or high school sporting
9  event); Cal. Health & Safety Code § 1799.106 (a police officer "who renders emergency medical
10 services at the scene of an emergency … shall only be liable in civil damages for acts or
11 omissions performed in a grossly negligent manner…").  Plaintiffs do not plead causes of action
12 under these statutes.  Were they applicable to the facts here, they permit Plaintiff to show liability
13 under the statute when gross negligence is required.  However, Plaintiffs plead ordinary
14 negligence (claim 3), in addition to negligent affliction of emotional distress (claims 5 and 6);
15 negligent supervision (claim 19); and negligent entrustment (claim 20).  Plaintiffs can allege facts
16 that show heightened negligence, without maintaining a separate cause of action for gross
17 negligence.  *See Continental Ins.* 197 Cal. App. at 330 (observing that "since … the doctrine of
18 comparative negligence, the need for categorization of misconduct into degrees has been radically
19 diminished."); *Sorensen v. Allred*, 112 Cal. App. 3d 717, 725 (1980) ("In summary, we conclude
20 that no defensible reason exists for categorizing willful and wanton misconduct as a different kind
21 of negligence not suitable for comparison with any other kind of negligence. … We apply an old
22 axiom, 'when the need for a rule ceases the rule ceases.'").  This claim is dismissed, with leave to
23 amend if Plaintiffs can show that an independent claim for gross negligence is required for relief
24 that would not be covered by their claims for ordinary negligence.

25   C.  Claim 24: Spoliation and Fabrication of Evidence

26     Claim 24 alleges that Defendants failed to thoroughly investigate the shooting, destroyed
27 or negligently allowed evidence to be destroyed, and fabricated evidence.  In their opposition,
28 Plaintiffs concede that California does not currently recognize a cause of action in tort on these

9

grounds. (ECF No. 27 at 9.) *See Cedars-Sinai Medical Center v. Superior Court* 18 Cal. 4th 1, 17–18 (1998) (holding that "there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which, as here, the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action.")[6]

This claim is dismissed with prejudice. Plaintiffs additionally request that the Court not restrict Plaintiffs' discovery rights with respect to this issue. *See* Fed. R. Evid. 26(b). Based on the facts alleged, the Court finds no reason to restrict discovery in such a manner at this time.

D. Claim 25: Violation of 42 U.S.C. § 1983; 4th, 8th, and 14th Amendments of the U.S. Constitution

Claim 25 alleges a violation of 42 U.S.C. § 1983, under the 4th, 8th, and 14th Amendments of the U.S Constitution. Defendants move to dismiss to the extent the claim relies upon the cruel and unusual punishment provision of the 8th Amendment, because this provision applies only to convicted prisoners. *See Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (citing *Whitley v. Albers*, 475 U.S. 312, 318–326 (1986)). Plaintiffs argue that Mr. Hughey's circumstances, given that he was seized from his home and detained at the hospital, are analogous to those of a pre-trial detainee, and "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *County of Sacramento v. Lewis* 523 U.S. 833, 849–850 (1998) (citing *City of Revere v. Massachusetts Gen. Hosp.* 463 U.S. 239, 244 (1983). Plaintiffs do not provide authority for the proposition that the cruel and unusual punishment provision extends to persons other than convicted prisoners. Additionally, Plaintiffs' rights may be vindicated by the 4th and 14th amendments, which are referenced in the same claim. Thus, claim 25 is dismissed with prejudice to the extent it relies upon the 8th Amendment.

---

[6] To the extent Plaintiffs are alleging a due process violation under the 14th amendment, this claim is preserved in their 25th cause of action, which alleges a § 1983 violation under the 14th amendment. *See Deveraux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) ("…there is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government.")

**V.     Conclusion**

- The complaint is dismissed in full with leave to amend.  Going forward, Plaintiffs are directed to designate the specific facts that underlie each claim, and the Defendant(s) to which a claim is directed.
- Claim 4 is also dismissed with leave to amend on the basis that Plaintiffs do not demonstrate precedent for an independent tort of gross negligence.
- Claims 22, 24, 25, 26, and 27 are dismissed with prejudice.
- Plaintiffs shall file and serve an amended complaint within 14 days of entry of this order.
- Defendants shall file a responsive pleading within 21 days of service of the amended complaint.

Dated:  November 5, 2014

_____
Troy L. Nunley
United States District Judge