1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN HUGHEY & JESSICA HUGHEY,          No.  2:14-cv-00037-TLN-AC

12                Plaintiffs,

13        v.                                 **ORDER**

14   DAN DRUMMOND, THOMAS
     McDONALD, WEST SACRAMENTO
15   POLICE DEPARTMENT, CITY OF
     WEST SACRAMENTO, CHRISTOPHER
16   WRIGHT, KENNETH FELLOWS, TOD
     SOCKMAN, GERRIT MARKUS, TRENT
17   TYLER, TOM MAGGIANO, NATHAN
     STEELE, & DAVID DELAINI,
18
                  Defendants.
19

20        The matter is before the Court on Defendants Dan Drummond ("Drummond"), Thomas

21   McDonald ("McDonald"), West Sacramento Police Department ("WSPD") and City of West

22   Sacramento (collectively the "City"[1]), Christopher Wright ("Wright"), Kenneth Fellows

23   ("Fellows"), Tod Sockman ("Sockman"), Gerrit Markus ("Markus"), Trent Tyler ("Tyler"), Tom

24   Maggiano ("Maggiano"), Nathan Steele ("Steele"), and David Delaini's ("Delaini") (collectively

25   "Defendants") Motion to Dismiss Plaintiffs Kevin Hughey ("Mr. Hughey") and Jessica Hughey's

26   ("Mrs. Hughey") (collectively "Plaintiffs") First Amended Complaint ("FAC").  (ECF Nos. 35 &

27

28   [1] All claims in the FAC are stated against both the WSPD and the City.  For convenience, the Court refers to a single
     public entity Defendant, the City, with the understanding that the WSPD is a division of the City.

                                              1

1  34.)  For the reasons discussed below, the motion to dismiss is GRANTED IN PART and

2  DENIED IN PART.

3  **BACKGROUND**

4  The Court incorporates by reference the more detailed allegations contained in the prior

5  order.  (ECF No. 33, November 6, 2014.)  In summary, Plaintiffs allege that WSPD officers

6  Wright, Markus, and Tyler arrived at the Hughey residence on the night of July 9, 2012, in

7  response to a 9-1-1 call regarding a domestic disturbance at Plaintiffs' residence.  Upon arrival,

8  Wright kicked in the door to the home and shot Mr. Hughey in the abdomen without provocation.

9  Immediately after the shooting and during the course of the investigation afterwards, Wright

10  fabricated a false version of the events that occurred in order to minimize his culpability.  (FAC

11  ¶¶ 10–23.)

12  Following the shooting, Mr. Hughey was taken to the hospital and underwent surgery.  He

13  was arraigned without his presence and posted bond on July 13, 2012; until then, Mr. Hughey

14  remained in the custody of the WSPD and was confined to his hospital room.[2]  While

15  hospitalized, Mr. Hughey missed the birth of Plaintiffs' son.  Mr. Hughey was discharged from

16  the hospital on July 15, 2012.  (FAC ¶¶ 30–48.)

17  Immediately following the shooting and later that night, WSPD officers entered the

18  Hughey residence and seized two laptops and a cellphone, for which they later obtained a warrant

19  to search.  (FAC ¶ 29.)  On July 10, 2012, the WSPD falsely reported to Sacramento media

20  sources that an officer had shot a man who was reaching for the officer's gun.  (FAC ¶ 32.)

21  Defendant Fellows, the lead detective investigating the matter, engaged in harassing and

22  defamatory behavior toward Plaintiffs throughout the course of the investigation.  As a result of

23  the shooting and investigation, Mrs. Hughey lost custody of her other toddler son, with whom she

24  shared custody with her ex-husband.   (FAC ¶¶ 52–57, 91.)

25  The Yolo County district attorney eventually brought felony charges against Mr. Hughey,

26  based on the events occurring the night of July 9, 2012.  At the preliminary hearing in March,

27  _____

28  [2] The Opposition states Mr. Hughey was arraigned five days after the shooting, which would be July 14, 2012.  (ECF No. 37 at 10.)  The FAC states Mr. Hughey posted bond on July 13, 2012.  (FAC ¶¶ 45–48.)

2013, officers present on the night of the shooting testified falsely as to what prompted the shooting.  Plaintiffs allege generally that the WSPD delayed in investigating the incident and attempted to cover up the true events that occurred.  In May, 2013, the WSPD issue a written determination of excessive force against Wright.  Wright was subsequently terminated.  In December, 2013, the Yolo County Superior Court dismissed with prejudice the criminal charges related to the shooting against Mr. Hughey.[3]  (FAC ¶¶ 58–91.)

Pursuant to these allegations, the FAC brings the following causes of action:

1. Assault (the City; Wright; Markus; Tyler)

2. Battery (the City; Wright; Markus; Tyler; Fellows)

3. Negligence (All Defendants)

4. Intentional Infliction of Emotional Distress (All Defendants)

5. Negligent Infliction of Emotional Distress (All Defendants)

6. Slander (the City; Wright; Fellows; Steele)

7. Libel (the City; Wright; Fellows; Steele)

8. Intrusion (Invasion of Privacy) (the City; Fellows)

9. False Light (the City; Wright; Fellows; Tyler; Steele)

10. Malicious Prosecution (All Defendants)

11. Abuse of Process (All Defendants)

12. False Arrest and False Imprisonment (Drummond; the City; Wright; Fellows; Sockman; Markus; Tyler)

13. Trespass to Land (the City; Wright; Fellows; Sockman; Markus; Maggiano; Steele; Tyler)

14. Trespass to Chattels (the City; Wright; Fellows; Sockman; Markus; Tyler)

15. Conversion (the City; Wright; Fellows; Sockman; Markus; Tyler)

---

[3] As stated in the transcript of the March 11, 2013, preliminary hearing, attached by Defendants to the motion to dismiss, the Sacramento Superior Court found there was sufficient evidence to bring charges against Mr. Hughey related to domestic violence, and for charges related to resisting arrest and attempting to remove a firearm while resisting a peace officer.  (*See* Transcript of Preliminary Hearing, Def.'s Request for Judicial Notice, ECF No. 35-3.) The Court understands the facts to be that some conduct underlying both sets of charges occurred on July 9, 2012, thus explaining the fact that Tyler, Markus, and Wright arrived at the house after the WSPD received a domestic disturbance call.  Eventually, Mr. Hughey pled guilty to misdemeanor corporal injury.  The felony charges related to resisting arrest and removing Wright's firearm were dismissed with prejudice.  (*See* ECF No. 35-1 at 13.)

1    16. Negligent Supervision (the City; Sockman; Tyler; Maggiano; Steele; Delaini)

2    17. Negligent Entrustment (Drummond; the City; Sockman; Tyler)

3    18. RICO violations, 18 U.S.C. § 1961, *et seq.* (All Defendants)

4    19. Violations under 42 U.S.C. § 1983 (All Defendants)

5                              **PROCEDURAL HISTORY**

6         On January 7, 2014, Plaintiffs filed the Complaint in this matter.  (ECF No. 1.)  On

7    November 6, 2014, this Court granted Defendants' Motion to Dismiss.  (ECF No. 33.)  Plaintiffs

8    filed the instant FAC on November 20, 2014.  (ECF No. 34.)  Defendants filed the instant Motion

9    to Dismiss on December 10, 2014.[4]  (ECF No. 35.)  Also on December 10, 2014, Defendants filed

10   a supporting request for judicial notice.[5]  (ECF Nos. 35-2 and 35-3.)  On December 31, 2014,

11   Plaintiffs filed an Opposition to Defendants' motion.  (ECF No. 37.)  On January 8, 2015,

12   Defendants filed a Reply to the Opposition.  (ECF No. 38.)  The matter was submitted without

13   oral argument on January 9, 2015.  (ECF No. 39.)

14                              **STANDARD OF REVIEW**

15        Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

16   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

17   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

18   defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic

19   v. Twombl*y, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

20   pleading standard relies on liberal discovery rules and summary judgment motions to define

21   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

22   534 U.S. 506, 512 (2002).

23        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

24

25   _____

26   [4] Defendant Wright is represented by separate counsel than that representing the other Defendants.  Wright has not filed a separate motion to dismiss and instead moves to join in the instant motion to dismiss.  (ECF No. 36.)  The other Defendants and Plaintiffs do not oppose the request; therefore Wright's joinder request is GRANTED.

27   [5] For the reasons stated in Defendants' request for judicial notice (ECF No. 35-2), and noting no opposition by
28   Plaintiffs to the request, the Court GRANTS Defendants' request, and takes judicial notice pursuant to Fed. R. Evid. 201 of the attached exhibits (ECF No. 35-3).

1   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

2   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

3   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

4   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

5   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

6   factual content that allows the court to draw the reasonable inference that the defendant is liable

7   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

8          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

9   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

10  1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

11  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

12  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

13  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

14  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

15  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

16  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

17  been alleged[.]"  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

18  459 U.S. 519, 526 (1983).

19         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

20  facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting

21  *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

22  the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While

23  the plausibility requirement is not akin to a probability requirement, it demands more than "a

24  sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a

25  context-specific task that requires the reviewing court to draw on its judicial experience and

26  common sense."  *Id.* at 679.

27         In ruling upon a motion to dismiss, the court may consider only the complaint, any

28  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## ANALYSIS

The Court notes three preliminary matters.  First, in their Opposition, Plaintiffs seek leave to amend to dismiss a number of the individual Defendants from certain causes of action.  Therefore, the Court does not provide analysis of claims against those Defendants who, based on Plaintiff's representations, will be voluntarily dismissed.

Second, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [] Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Cal. Gov. Code § 815.2.  Therefore, for the purposes of the instant motion, to the extent a claim is stated against an individual Defendant and immunity does not apply, the Court also finds the claim is stated against the City.

Third, the Court's rulings regarding immunity are restricted to the instant motion to dismiss, where the facts must be construed in favor of Plaintiffs.  Subsequent stages of the

1   litigation, with different burdens of proof, may compel different findings.

2   **Mrs. Hughey's Claims**

3   Defendants argue that claims by Mrs. Hughey are untimely, pursuant to the California

4   Government Claims Act, Cal. Gov. Code § 900 *et seq.* Per sections 945.4 and 950.2, no suit for

5   damages against a public entity, or against a public employee for actions within the scope of his

6   or her employment, can be maintained without compliance with the claims process. *See* Cal.

7   Gov. Code § 945.4 ("[N]o suit for money or damages may be brought against a public entity on a

8   cause of action for which a claim is required to be presented … until a written claim therefore has

9   been presented to the public entity and has been acted upon by the board, or has been deemed to

10  have been rejected by the board …"); Cal. Gov. Code § 950.2 ("Except [for circumstances not

11  pled here], a cause of action against a public employee or former public employee for injury

12  resulting from an action or omission in the scope of his employment as a public employee is

13  barred if an action against the employing public entity for such injury is barred …"). *See Pac.

14  Tel. & Tel. Co. v. Cnty. of Riverside,* 106 Cal. App. 3d 183, 188 (1980); *Mohsin v. California

15  Dept. of Water Resources*, 52 F. Supp. 3d 1006 (Oct. 1, 2014 E.D. Cal.). After a claim is

16  rejected, an individual has six months from the date the notice is deposited in the mail to file a

17  court action. Cal. Gov. Code § 945.6.

18  According to Defendants, Mrs. Hughey submitted a claim for damages to the City on

19  October 10, 2012. The City gave notice of claim rejection by letter dated November 26, 2012,

20  sent by certified mail on or before December 5, 2012. (*See* ECF No. 35-3, Ex. F, containing a

21  copy of the claim rejection letter.) Therefore, Mrs. Hughey had to file suit within six months of

22  that date. However, this action was first filed on January 7, 2014, approximately thirteen months

23  past that date.

24  In their Opposition, Plaintiffs do not contest that Mrs. Hughey's claims violate a

25  straightforward application of the six month SOL. Rather, Plaintiffs highlight the fact that the

26  WSPD continued to leverage unsupported criminal charges against Mr. Hughey until November,

27  2013. (ECF No. 37 at 3.) *See* Cal. Gov. Code § 945.3 (providing that no person charged with a

28  criminal offense may bring a civil action against a peace officer or the employing entity based on

1   conduct of the peace officer relating to the offense for which the accused is charged).  Therefore,

2   Plaintiffs argue: 1) that Mrs. Hughey's claim is tied to Mr. Hughey's claims, so she would have

3   been precluded from bringing the instant matter prior to resolution of Mr. Hughey's claims; 2)

4   that the six-month SOL is subject to equitable tolling, as long as Ms. Hughey acted reasonably

5   and in good faith and the public entity received timely notice and sustained no significant

6   prejudice; and 3) that the six month SOL applies only to public entities, not to the individual

7   named Defendants.

8        The first argument is unavailing.  The factors to consider in deciding whether Mrs.

9   Hughey's claims are tied to Mr. Hughey are as follows: Mrs. Hughey is referenced in the "Factual

10  Allegations" portion of the FAC with respect to the altercation at the Hughey residence on July 9,

11  2012; the subsequent hospitalization of Mr. Hughey; investigation by WSPD detectives, including

12  Defendant Fellows' allegedly harassing activities; the birth of Plaintiffs' son on July 14, 2014; at

13  some point, Plaintiffs' losing custody of Mrs. Hughey's toddler son as a result of the shooting and

14  ensuing events; and Mrs. Hughey's having to hire counsel to navigate the aftermath of the

15  shooting.  At present, it is not apparent how these events, to the extent they are relevant to Mrs.

16  Hughey's claims, were tied to the resolution of criminal charges against Mr. Hughey.  Plaintiffs

17  do not dispute that Mrs. Hughey submitted a claim to the City for damages prior to the resolution

18  of Mr. Hughey's criminal charges, and that based on a December 5, 2012, mailing date of the

19  rejection letter, Mrs. Hughey's claims in the instant matter would not meet the SOL provided for

20  in section 945.6.

21       The second argument is also unavailing, because the SOL began to run when the City

22  denied Mrs. Hughey's claims for damages, sent via mail on or before December 5, 2012.  In

23  support of its position, Plaintiffs cite *McDonald v. Antelope Valley Cmty. Coll. Dist.,* 45 Cal. 4th

24  88, 101 (2008).  However, in the *McDonald* case, equitable tolling occurred pending the pursuit

25  of administrative remedies, not after the administrative claim had been rejected, as is the case

26  here.  At present, Plaintiffs do not provide authority for the position that equitable tolling must

27  exempt Mrs. Hughey from a straightforward application of the SOL, where it is undisputed that

28  she filed a claim for damages related to the July 9, 2012, shooting and its aftermath, received a

rejection letter, but did not file suit until roughly thirteen months after the mailing date of the rejection.

As to the third argument, the SOL from section 945.6 does apply to the individually named Defendants. *See* Cal. Gov. Code § 950.6(b) ("A suit against the public employee or former public employee for such injury must be commenced within the time frame prescribed by Section 945.6 for bringing an action against the public entity.")

Therefore, for the foregoing reasons, Plaintiff Mrs. Hughey's state law claims are dismissed.[6]

### Claims 1 and 2: Assault and Battery

Plaintiffs state a cause of action for assault against the City, Wright, Markus, and Tyler. Generally, the allegations underlying this claim involve the shooting itself and its immediate aftermath at the Hughey residence, where Wright, Markus, and Tyler were present.  (FAC ¶¶ 101–104.)

Plaintiffs state a cause of action for battery against the City, Wright, Markus, Tyler, and Fellows.  The allegations underlying this claim are the same as for the assault claim, but Plaintiffs additionally allege that Fellows shackled Mr. Hughey to his hospital bed without justification. (FAC ¶ 107.)

Defendants do not move to dismiss these causes of action.  (ECF No. 35-1 at 20.)

### Claim 3: Negligence

Defendants seek dismissal of Plaintiffs' third claim in the FAC, negligence against all Defendants.  Plaintiffs' Opposition clarifies that they seek leave to amend to state this claim only against Wright, who committed the shooting; Markus and Tyler, who were present at Plaintiffs' home during and after the shooting occurred; and the City.  (ECF No. 37 at 4.)  Therefore the Court restricts the analysis to these Defendants.

With respect to Wright, in their Opposition, Plaintiffs clarify that Wright's negligence consists of the shooting itself and his subsequent fabrication of evidence.  With respect to Markus

---

[6] Because Mrs. Hughey will be given leave to amend, the Court continues to refer to the causes of action below as stated by "Plaintiffs", i.e. both Mr. and Mrs. Hughey.

and Tyler, the Opposition clarifies that their negligence consists of failing to protect the Hughey family upon witnessing the shooting, and failing to prevent Wright from fabricating a false story after the shooting.  (ECF No. 37 at 5.)  Plaintiffs also appear to state that Mr. Hughey's shooting created a special relationship between he and the WSPD, thus creating a duty on the part of the WSPD and its officers (in this case Markus and Tyler) to protect Mr. Hughey from Wright.  (ECF No. 37 at 5.)

Defendants seek dismissal on the following three grounds: 1) lack of specificity regarding each individual Defendants' conduct; 2) immunity under Cal. Gov. Code §§ 820.2 and 821.6; and 3) an argument that the relevant communications for this claim – oral or written communications made in prosecuting Mr. Hughey – are privileged under Cal. Civ. Code § 47.

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Nally v. Grace Community Church*, 47 Cal. 3d 278, 292 (1988).  "[The California Supreme Court] has long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes*, 57 Cal. 4th at 629 (citing *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979); *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970)).  "The reasonableness of an officer's conduct is determined in light of the totality of circumstances." *Id.*

Here, drawing the facts in favor of Plaintiffs, the FAC states a claim for negligence against Wright with adequate specificity.  The relevant allegations are that Wright kicked in the door to the Hughey's residence, Wright shot Mr. Hugley without provocation, and Wright falsely told other WSPD officers both immediately afterwards and later that night, that Mr. Hughey had reached for his gun.  (FAC ¶¶ 12–18.)  These allegations state a claim that Wright breached his duty to act reasonably when using deadly force, resulting in injury to Mr. Hughey.

The main allegations against Tyler is that he lied at Mr. Hughey's preliminary hearing; he initially put handcuffs on Mr. Hughey after he was shot; and he and Markus failed to correct statements by Wright as to who had been the aggressor.  (FAC ¶¶ 61 & 107.)  Markus's alleged conduct includes: "Officer Markus, who was coming around the corner of the row of four homes,

literally seconds away and who saw the muzzle flash from Wright's shooting of Mr. Hughey, inquired into what had happened that would cause an unarmed man to be shot within his home." (FAC ¶ 17.)  Markus also put handcuffs on Mr. Hughey after he was shot, and failed to correct Wright's false statements about what had prompted the shooting.  (FAC ¶¶ 18 & 107.)

Plaintiffs do not allege that Markus and Tyler used deadly force, and thus the duty invoked by the use of such force does not apply to these Defendants.  Although Plaintiffs raise the issue that Markus and Tyler possessed a "duty of honesty and candor" with respect to preventing Wright from lying, they do not allege that this conduct is actionable as negligence.  Plaintiffs also do not allege sufficient facts to support a theory that Wright and Markus "had a duty to take reasonable care in protecting victim Mr. and Mrs. Hughey from further harm from [] Wright and for enforcing the law against Wright."  (ECF No. 37 at 5.)  It appears – based on a plain reading of the allegations in full – that Markus and Tyler did not actually see Wright shoot Mr. Hughey.  Plaintiffs do not allege other facts leading to the plausible conclusion that Markus and Tyler must have known the shooting was the result of excessive force, or must have known Wright was lying when he stated that Mr. Hughey reached for Wright's weapon, thus invoking a duty to protect Plaintiffs from Wright.  Therefore, the Court does not find the instant allegations adequately support a claim for negligence against Markus and Tyler.

With respect to immunity under Cal. Gov. Code § 820.2:  "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov. Code § 820.2.

> [A] workable definition of immune discretionary acts draws the line between planning and operational functions of government. Immunity is reserved for those basic policy decisions which have … been expressly committed to coordinate branches of government, and as to which judicial interference would thus be unseemly.  Such areas of quasi-legislative policy-making … are … sufficiently sensitive to call for judicial abstention from interference that might even in the first instance affect the coordinate body's decision-making process.
>
> On the other hand … there is no basis for immunizing lower-level, or ministerial decisions that merely implement a basic policy already formulated.  Moreover … immunity applies only to

1

deliberate and considered policy decisions, in which a conscious
balancing of risks and advantages … took place.  The fact that an
employee normally engages in a discretionary activity is irrelevant
if, in a given case, the employee did not render a considered
decision.

…

[O]ur subsequent cases have carefully preserved the distinction
between policy and operational judgments.[7]

*Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (citing *Johnson* 69 Cal. 2d 782 (1968))

(internal citations, alterations, and quotation marks omitted).

Here, the allegations indicate Wright, Markus, and Tyler were not making basic policy

decisions but were making operational judgments.  Therefore, for the purposes of this motion,

claims against Markus, Tyler, and Wright are not precluded under Cal. Gov. Code § 820.2.

For the foregoing reasons, Plaintiffs state a claim for negligence against Wright and the

City, but not against Tyler and Markus.[8]

**Claim 4: Intentional Infliction of Emotional Distress ("IIED")**

The Opposition clarifies that the IIED claim will be limited to the City, Markus, and Tyler

for their failure to immediately arrest Wright and for their failure in to stop him from engaging in

further criminal activity.  (ECF No. 37 at 6.)  The IIED claim will be further limited to the City

and Wright for the shooting and the "fabricated criminally false statements" made afterwards.

---

[7] California courts have "rejected claims of immunity for a bus driver's decision not to intervene in one passenger's violent assault against another (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793–795[, 221 Cal.Rptr. 840, 710 P.2d 907]), a college district's failure to warn of known crime dangers in a student parking lot (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815[, 205 Cal.Rptr. 842, 685 P.2d 1193] ), a county clerk's libelous statements during a newspaper interview about official matters (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 415–416[, 134 Cal.Rptr. 402, 556 P.2d 764] ), university therapists' failure to warn a patient's homicide victim of the patient's prior threats to kill her (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 444–447[, 131 Cal.Rptr. 14, 551 P.2d 334] ), and a police officer's negligent conduct of a traffic investigation once undertaken (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261–262[, 74 Cal.Rptr. 389, 449 P.2d 453] )."  *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1398 (2009).

[8] The Opposition clarifies, to the extent the negligence claim should be construed as negligent criminal prosecution of Mr. Hughey:  "[t]he *gravamen* of Mr. and Mrs. Hughey's negligence claim is not wrongful criminal prosecution of Mr. Hughey.  The *gravamen* of the negligence claim is the failure to use reasonable care when approaching a home and communicating with the occupants and then the failure to protect and mitigate damages to Mr. and Mrs. Hughey from further criminal acts by Wright."  As it is not presently clear what Plaintiffs' intent is with respect to this claim, the Court reserves ruling on Defendants' defenses of prosecutorial immunity under Cal. Gov. Code § 821.6, and privileged communications under Cal. Civ. Code § 47(b).

1  (ECF No. 37 at 6.)

2       "Under California law, a prima facie case of intentional infliction of emotional distress

3  requires the following: (1) extreme and outrageous conduct by the defendant; (2) with the

4  intention of causing, or reckless disregard of the probability of causing emotional distress; (3) the

5  plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation

6  of the emotional distress by defendant's outrageous conduct."  *Dove v. PNS Stores, Inc.,* 982 F.

7  Supp. 1420, 1424 (C.D. Cal. 1997).

8       With respect to Markus and Tyler, the allegations regarding their conduct at Plaintiffs'

9  residence, stated *supra*, do not lead to a plausible conclusion that they were engaged in extreme

10  and outrageous conduct intending to cause, or in reckless disregard of the probability of causing,

11  emotional distress.  Rather, said allegations describe the fact that Markus and Tyler were making

12  operational judgments while responding to a domestic disturbance 9-1-1 call, which ultimately

13  involved the shooting of Mr. Hughey by Wright.

14        With respect to Wright, the general allegation that, "Defendant Wright engaged in

15  extreme and outrageous behavior when he individually forced entry and discharged his firearm

16  without cause and without basis including but limited to his failure to ascertain that there was no

17  immediate issue or threat as he approached Plaintiffs' home," (FAC ¶ 118), and the ensuing

18  events leading to Mr. Hughey's hospitalization and criminal prosecution, are adequate to state a

19  claim for IIED against Wright.

20        As discussed, immunity under section 820.2 does not apply to Wright because he was

21  making operational judgments, not policy decisions.  Wright, or Defendants on his behalf, also do

22  not oppose a claim stated against Wright for IIED.  Therefore, this claim is dismissed against all

23  Defendants except Wright and the City.

24        **Claim 5: Negligent Infliction of Emotion Distress**

25        The NIED claim, Plaintiffs clarify, would be maintained only by Mrs. Hughey.  (ECF No.

26  37 at 6.)  Because Plaintiffs do not explain how Mrs. Hughey's state law claims are within the six

27  month SOL, this claim is dismissed with leave to amend.

28  //

1    **Claim 6: Slander**

2        Slander is a false and unprivileged publication, orally uttered, and
         also communications by radio or any mechanical or other means
3        which: 1. Charges any person with crime, or with having been
         indicted, convicted, or punished for crime; 2. Imputes in him the
4        present existence of an infectious, contagious, or loathsome disease;
         3. Tends directly to injure him in respect to his office, profession,
5        trade or business, either by imputing to him general disqualification
         in those respects which the office or other occupation peculiarly
6        requires, or by imputing something with reference to his office,
         profession, trade, or business that has a natural tendency to lessen
7        its profits; 4. Imputes to him impotence or a want of chastity; or 5.
         Which, by natural consequence, causes actual damage.
8
     Cal. Civ. Code § 46.
9
            Plaintiffs' Opposition clarifies that the slander claim will be limited to Wright and the
10
     City for Wright's oral statements after the shooting – specifically to Mrs. Hughey – falsely
11
     accusing Mr. Hughey of attacking him.  (ECF No. 37 at 7.)  However, Plaintiffs provide no
12
     authority for the position that this set of circumstances leads to a plausible claim for slander.
13
     Moreover, Plaintiffs do not explain how Mr. Hughey was injured as a result of these statements,
14
     because Mrs. Hughey witnessed the shooting.  Therefore this claim is dismissed.
15
            **Claim 7: Libel**
16
            Libel is a false and unprivileged publication by writing, printing,
17        picture, effigy, or other fixed representation to the eye, which
         exposes any person to hatred, contempt, ridicule, or obloquy, or
18        which causes him to be shunned or avoided, or which has a
         tendency to injure him in his occupation.
19
     Cal. Civ. Code § 45.
20
            The Opposition clarifies that the libel claim will be limited to Defendant Steele, a
21
     spokesman for the WSPD, and the City, for providing false statements to local media regarding
22
     the shooting.  Plaintiffs seek leave to amend to incorporate the published statements, appearing in
23
     articles in the "News Ledger", at www.kcra.com, and at blogs.sacbee.com.   (ECF No. 37 at 7.)
24
     These articles included the statements that Mr. Hughey reached for an officer's handgun which
25
     motivated the shooting.  The Opposition clarifies – and given the dates on the articles of July 10
26
     and July 11, 2012, this position is tenable – that the statements were made prior to the
27
     commencement of any judicial proceedings against Mr. Hughey.  (*See* ECF No. 37-1, containing
28

                                                 14

1  copies of the three articles.)

2       Defendants argue that regardless of when the statements were made, such statements are

3  not actionable per Cal. Gov. Code § 821.6 and Cal. Civ. Code § 47(a) and (b), because they relate

4  to an intended prosecution or investigation of Mr. Hughey.

5       Generally, "California courts construe section 821.6 broadly in furtherance of its purpose

6  to protect public employees in the performance of their prosecutorial duties from the threat of

7  harassment through civil suits." *Richardson-Tunnell v. Sch. Ins. Program for Employees (SIPE)*,

8  157 Cal. App. 4th 1056, 1062 (2007) (citing *Gillan v. San Marino* 147 Cal. App. 4th 1033, 1048

9  (2007)).  "Investigations are considered to be part of judicial and administrative proceedings for

10  purposes of section 821.6 immunity." *Id.* (citing *Kemmerer v. County of Fresno*, 200 Cal.App.3d

11  1426, 1436–1437 (1988)).  Immunity extends to investigations even if there is a later decision not

12  to institute administrative proceedings or to initiate a prosecution. *Ingram v. Flippo*, 74 Cal. App.

13  4th 1280, 1293 (1999).  For instance, in *Ingram*, the district attorney received a complaint filed by

14  interested citizens regarding alleged Brown Act violations, i.e. violations of the right for public

15  access to meetings of public bodies.  The attorney conducted an investigation and made known

16  the results of that investigation, which were then disseminated to the public.  Explaining that "the

17  test of immunity is not the timing of the publication but where there is a causal relationship

18  between the publication and the prosecution process," the *Ingram* court found that the district

19  attorney's actions "constitute[d] an exercise of prosecutorial discretion even though he decided

20  not to prosecute an action at the time." *Id.*

21       Here, the allegation is that Steele, the day after the shooting, stated falsely to local media

22  that Mr. Hughey had reached for Wright's gun, thus motivating the shooting.  Without further

23  fact finding, it is not apparent there is a "causal relationship between the publication and the

24  prosecution process," and thus the "test of immunity" cannot be met in favor of Steele and the

25  City on this basis. *Id.*  The FAC's allegations also do not foreclose the possibility that the

26  relevant statements were made as part of an investigation into the shooting.  Therefore, for the

27  purposes of this motion, in which the facts must be drawn in favor of Plaintiffs, section 821.6

28  does not bar a claim for libel against Steele and the City.

California Civil Code section 47 establishes a privilege that bars liability in tort for the making of certain privileged statements.   Pursuant to section 47(a), a privileged statement is one made "[i]n the proper discharge of an official duty."   California courts have defined such non-actionable statements as "those made in the discharge of an official duty that are related to a policy-making function." *McQuirk v. Donnelley*, 189 F.3d 793, 801 (9th Cir. 1999) (referencing *Saroyan v. Burkett*, 57 Cal. 2d 706 (1962)).   However, "[t]his requirement that the statements at issue be related to the exercise of a policy-making function is closely related to the inquiry into whether an official was acting at a planning, as opposed to an operational, level under § 820.2. That is, actions found to be operational for purposes of § 820.2 cannot constitute statements made in the exercise of a policy-making function for purposes of § 47(a)." *Id.*  Drawing the facts in favor of Plaintiffs, the alleged statements by Steele to the media do not involve a policy-making decision, but were made in the course of operational duties, and thus are not privileged under section 47(a).

Pursuant to Cal. Civ. Code section 47(b), the privilege bars a civil action for damages for communications made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate]." *Hagberg v. California Federal Basnk FSB*, 32 Cal. 4th 350, 360 (2004) (quoting Cal. Civ. Code 47(b)).   "The privilege established by this subdivision is often referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." *Id.* Section 47(b) "encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Id.*  However here, drawing the facts in favor of Plaintiffs, the alleged false statements do not show a connection to litigation, or any other proceeding.   This is especially apparent given the dates when the statements were published, on July 10 and 11, 2012, one or two days after the shooting.   Therefore, the Court does not find the statements were privileged under section 47(b).

Defendants also argue that Plaintiff's allegations of libel lack the requisite particularity.

16

1    *See des Granges v. Crall*, 27 Cal. App, 313, 315 (1915).  However, given the attached published

2    statements themselves (ECF No. 37-1), this argument appears to be moot.

3         In sum, Plaintiffs allege that Steele, as a spokesperson for the WSPD, made false

4    statements the day after the shooting regarding illegal actions taken by Mr. Hughey.  Said

5    statements were published in news sources, which led to damage to Mr. Hughey's reputation in

6    the community.  Drawing the facts in favor of Plaintiffs, they adequately state a claim that meets

7    the elements for libel, Cal. Civ. Code § 45, against Steele and the City.

8         **Claims 8: Invasion of Privacy**

9         The invasion of privacy claim is brought against the City and Fellows.  The relevant

10   allegations are: "[Fellows'] invasive tactics include but are not limited to information related to

11   [Plaintiffs'] custody dispute with Mrs. Hughey's ex-husband, asking others knowing Mr. Hughey

12   whether Mr. Hughey was ever abused as a child, ordering forensic staff to search both Mr. and

13   Mrs. Hughey's computer for any material that he could use as leverage against Mr. and Mrs.

14   Hughey and stating to others including Mrs. Hughey's family and ex-husband that material on

15   their computers was illicit and unlawful."  (FAC ¶ 139.)  Plaintiffs allege that their laptops and a

16   cellphone were seized from the home the night of the shooting, without a warrant.  (FAC ¶ 29;

17   ECF No. 37 at 8.)  The phone and one of the laptops were property of a business law firm and

18   contained client-attorney communications and files.  (FAC ¶ 38.)  Plaintiffs state they "have

19   never received their hard drives with personal family photos and other personal electronic files."[9]

20   (FAC ¶ 174.)

21        "To state a claim for violation of the constitutional right of privacy, a party must establish:

22   (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the

23   circumstances; and (3) a serious invasion of the privacy interest."  *Moreno v. Hanford Sentinel,*

24   *Inc.*, 172 Cal. App. 4th 1125, 1129 (2009).  "Four distinct kinds of activities have been found to

25   violate this privacy protection and give rise to tort liability. These activities are: (1) intrusion into

26   private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false

27   light; and (4) misappropriation of a person's name or likeness. Each of these four categories

28   _____
[9] The meaning of this allegation is not further explained.

1   identifies a distinct interest associated with an individual's control of the process or products of

2   his or her personal life." *Id.*

3         Defendants respond that Fellows' actions are immune under Cal. Gov. Code § 821.6,

4   which provides for prosecutorial immunity, and Plaintiffs concede that immunity generally

5   applies to the gathering of information relevant to potential charges against Mr. Hughey.  (ECF

6   No. 37 at 8.)  Defendants also clarify that there was a search warrant for the seized computers and

7   cell phone, dated July 10, 2012.  They provide a copy of the warrant which lists the computers

8   and cell phone seized, and authorizes their search.  (ECF No. 35-3, Ex. A.)  However, it is not

9   clear how the initial seizure of this equipment, on the night of the shooting, relates either: 1) to

10   the investigation or the prosecution of a charge of domestic violence, or 2) to the investigation or

11   prosecution of charges that Mr. Hughey resisted a peace officer or attempted to take the officer's

12   firearm.[10]

13         In the instant case, drawing the facts in favor of Plaintiffs, Plaintiffs had 1) a legally

14   protected privacy interest in the electronic equipment seized the night of the shooting; 2) a

15   reasonable expectation of privacy under the circumstances, notwithstanding the fact that police

16   were responding to a 9-1-1 call regarding domestic violence; and 3) a serious invasion of that

17   privacy interest, given that the electronic equipment was seized without a warrant.  *Moreno*, 172

18   Cal. App. 4th at 1129.  Thus, on these grounds Plaintiffs adequately state a claim that meets the

19   elements for invasion of privacy.

20         Other relevant allegations include that Fellows inquired with others regarding whether Mr.

21   Hughey was abused as a child; disseminated information about the shooting and the investigation

22   to Mrs. Hughey's ex-husband; and stated to others including Mrs. Hughey's family and ex-

23   husband that Plaintiffs had illegal content on their computers.  (FAC ¶ 139.)  These allegations

24   align most closely with "intrusion into private matters" and "public disclosure of private facts,"

25   the sub-classes of an invasion of privacy tort.  *Moreno*, 172 Cal. App. 4th at 1129.  To state a

26

---

27   [10] The Court understands the facts to be that Mr. Hughey pled guilty to a misdemeanor corporal injury charge related to conduct occurring the night of the shooting, and the victim was Plaintiff Mrs. Hughey.  (ECF No. 35-3, July 11, 2012 Criminal Complaint against Kevin Alan Hughey, at p. 1.)  It is not clear why Mrs. Hughey's computer was

28   seized.  Defendants do not submit the affidavit that would accompany the warrant.

claim for intrusion into private matters, a plaintiff must state facts showing: "1) intrusion into a private place, conversation or matter; and 2) in a manner highly offensive to a reasonable person." *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1215 (S.D. Cal. 2010). To state a claim for public disclosure of private facts, a plaintiff must state facts showing: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Moreno*, 172 Cal. App. 4th at 1129–30 (internal quotation marks omitted). Drawing the facts in favor of Plaintiffs, the elements of these sub-classes of the invasion of privacy tort are met. Again drawing the facts in favor of Plaintiffs, it is not clear that the alleged conduct related either to an investigation or prosecution of the shooting or a domestic violence incident. Thus for the purposes of the instant motion, immunity under Cal. Gov. Code § 821.6 does not apply.

For the foregoing reasons, Plaintiffs state a claim for invasion of privacy against the City and Fellows.

### Claims 9, 10, & 11: False Light, Malicious Prosecution, Abuse of Process

The Opposition states that Plaintiffs will voluntarily dismiss these claims or restate the relevant facts within other causes of action. (ECF No. 37 at 8.) Therefore these claims are dismissed.

### Claim 12: False Arrest & False Imprisonment

This claim is brought against Defendants Drummond, the City, Wright, Fellows, Sockman, Markus, and Tyler.[11] The relevant facts involve the incident at Mr. Hughey's home when he was shot by Wright, the handcuffing at his house based on Wright's alleged statements that Mr. Hughey had attacked him, and Mr. Hughey's subsequent handcuffing and confinement at the hospital. Specifically, Tyler and Markus pointed their firearms at Mr. Hughey and handcuffed him. Fellows shackled Mr. Hughey to his hospital bed. Sockman and Drummond failed to release Mr. Hughey. While in the hospital, up until the point that Mr. Hughey posted bond, Mr.

---

[11] As discussed *infra*, Plaintiffs state a claim against the named Defendants, with the exception of Drummond, against whom Plaintiffs make only one unsupported allegation: "Drummond was also informed of the falsity of Wright's statement and failed to authorize the release of Mr. Hughey." (FAC ¶ 159.)

1    Hughey was under armed guard and not permitted to leave the room.  (FAC ¶ 159.)  Mr. Hughey

2    was arraigned several days later, and posted bond on July 13, 2012.  At that point, Mr. Hughey

3    was released from custody, although he was not discharged from the hospital until July 15,

4    2012.[12]  (ECF No. 34 ¶¶ 45–48.)

5              "A police officer who makes an arrest without a warrant and without justification may be

6    held civilly liable for false arrest and imprisonment."  *Dragna v. White*, 45 Cal. 2d 469, 471–72

7    (1955).  "A cause of action for false imprisonment based on unlawful arrest is stated where it is

8    alleged that there was an arrest without process, followed by imprisonment and damages.  Upon

9    proof of those facts the burden is on the defendants to prove justification for the arrest."  *Id*.  The

10   California Supreme Court has also defined false imprisonment as "nonconsensual, intentional

11   confinement of a person, without lawful privilege, for an appreciable length of time, however

12   short."  *Fermino v. Fedco, Inc.* 7 Cal. 4th 701, 715 (1994).

13             "Under California law, a police officer is not granted governmental immunity for false

14   arrest and imprisonment."  *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511 (2006) (citing

15   *Asgari v. City of L.A.,* 15 Cal. 4th 744, 752 (1997)).  "However, Penal Code section 847(b)

16   contains principles that parallel the immunity analysis."  *Id.*  Under Section 847(b):

> 17   There shall be no civil liability on the part of, and no cause of
> 18   action shall arise against, any peace officer or federal criminal
>      investigator or law enforcement officer … acting within the scope
>      of his or her authority, for false arrest or false imprisonment arising
> 19   out of any arrest under any of the following circumstances:
>
> 20   (1) The arrest was lawful, or the peace officer, at the time of the
>      arrest, had reasonable cause to believe the arrest was lawful.
> 21
> 22   (2) The arrest was made pursuant to a charge made, upon
>      reasonable cause, of the commission of a felony by the person to be
> 23   arrested.

24   Cal. Penal Code § 847(b).

25             Defendants argue that the named officers in this claim had reasonable cause to believe the

26   arrest was lawful, Cal. Pen. Code § 847(b)(1); or that the arrest was based upon a belief that Mr.

27   Hughey had committed a felony, Cal. Pen. Code § 847(b)(2).  Defendants also argue generally

28   _____

[12] The Opposition states Mr. Hughey was arraigned five days after the shooting, which would be July 14, 2012.
(ECF No. 37 at 10.)  The FAC states Mr. Hughey posted bond on July 13, 2012.  (FAC ¶¶ 45–48.)

1  that, apart from the "reasonable cause" standard stated specifically in section 847(b), there was

2  probable cause to make an arrest.  (ECF No. 35-1 at 12–15.)  Defendants point out that the State

3  Superior Court, at the March 11, 2013 preliminary hearing, found there existed sufficient

4  evidence that Mr. Hughey committed felony corporal injury on a household member the night of

5  the shooting.  Mr. Hughey was eventually convicted by plea for misdemeanor corporal injury.

6  The FAC also concedes that the police were responding on the night of the shooting to an

7  emergency call regarding possible domestic violence.

8         However, drawing the facts in favor of Plaintiffs, there is adequate factual ambiguity as to

9  the justification either for the initial arrest or the continued confinement.  The relevant issue is

10  what facts were available to the officers responsible for Mr. Hughey's arrest and confinement.

11  *See O'Toole*, 140 Cal. App. 4th at 511 (considering reasonable cause to arrest under Cal. Pen.

12  Code § 847(b) and finding "[r]easonable cause to arrest exists when the facts known to the

13  arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's

14  guilt"); *U.S. v. Lopez*, 482 F.3d 1067, 1072 (2007) ("Probable cause to arrest exists when officers

15  have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable

16  caution to believe that an offense has been or is being committed by the person being arrested").[13]

17         Here the allegations as to Mr. Hughey's arrest for domestic violence, drawn in Plaintiffs'

18  favor, are that Wright went up to the front door and started kicking it, at which point Mrs. Hughey

19  went to the front door to try to unlock it.  Then Mr. Hughey moved Mrs. Hughey aside and

20  reached for the deadbolt.  Before he could unlock the door, the lock shattered and the door swung

21  open, causing Mr. Hughey to take steps back.  Mr. Hughey began to raise his hands, and at that

22  point Wright shot Mr. Hughey.  The Court is not persuaded by Defendants' arguments that at the

23  preliminary hearing, the superior court found there existed sufficient evidence that Mr. Hughey

24  committed felony corporal injury on a household member the night of the shooting; that Mr.

25  Hughey was eventually convicted by plea for misdemeanor corporal injury; or that the FAC

26   

27  [13] *See also Collins v. City of Sacramento*, 328 Fed. Appx. 361, 363 (9th Cir. 2009) (reasoning that probable cause to arrest supports an officer's reasonable cause to believe that an arrest is lawful, for the purposes of Cal. Pen. Code § 847(b)(1)).

28   

1    concedes that on the night of the shooting, the police were responding to an emergency call

2    regarding possible domestic violence.  The aforementioned arguments are not persuasive because

3    at the time of the shooting, officers had yet to contact Mrs. Hughey, the victim of Mr. Hughey's

4    domestic violence in order to establish that she had been assaulted.  Thus, at the time of the

5    shooting there were no facts known to the officers to support an arrest for domestic violence other

6    than the initial emergency call regarding possible domestic violence.  Further, this Court has

7    before it no facts related to what the named Defendants knew during the duration of Mr.

8    Hughey's period in WSPD custody.  As to whether there was probable cause for arrest based on

9    Wright's statements that Mr. Hughey had reached for his gun, this relies upon facts that are

10   heavily disputed by Plaintiffs.  It is undisputed that the WSPD made an excessive force finding

11   against Wright, and Wright was terminated.  Therefore, construing the allegations in full in a light

12   favorable to Plaintiffs, the fact that Wright stated to other officers that Mr. Hughey had reached

13   for his gun does not justify Mr. Hughey's arrest and confinement for the several days following

14   the shooting until Mr. Hughey posted bond.

15          In sum, Plaintiffs allege that Wright unlawfully shot Mr. Hughey; that Markus and Tyler

16   should have known that the arrest of Mr. Hughey lacked justification, even if they lacked the

17   certainty that Wright was lying about what prompted the shooting; that the other named

18   Defendants were informed of the unlawful shooting but chose to ignore this information; and

19   there were not other reasons known to the named Defendants for keeping Mr. Hughey under

20   arrest at the hospital for several days following the shooting.  Therefore, with due considerations

21   to the FAC's allegations in full, the Court finds Plaintiffs state a claim for false arrest and false

22   imprisonment against the named Defendants, with the exception of Defendant Drummond.

23          **Claims 13: Trespass to Land**

24          Plaintiffs' trespass to land claim is made against the City, Wright, Fellows, Sockman,

25   Markus, Maggiano, Steele, and Tyler, based on their entry into the residence either at the time of

26   the shooting or later that night.  (FAC ¶ 163.)

27          "The essence of the cause of action for trespass is an unauthorized entry onto the land of

28   another."  *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171,

1    1177-78 (citing *Cassinos v. Union Oil Co.* 14 Cal. App. 4th 1770, 1778 (1993)) (internal

2    quotation marks omitted).  "The intent required as a basis for liability as a trespasser is simply an

3    intent to be at the place on the land where the trespass allegedly occurred…. The defendant is

4    liable for an intentional entry although he has acted in good faith, under the mistaken belief,

5    however reasonable, that his committing no wrong."  *Id.* (citing *Miller v. National Broadcasting*

6    *Co.*, 187 Cal. App. 3d 1463, 1480–81 (1986)) (internal quotation marks omitted).  "[A] trespass

7    may occur if the party, entering pursuant to a limited consent, i.e., limited as to purpose or place,

8    proceeds to exceed those limits by divergent conduct on the land of another.  A conditional or

9    restricted consent to enter land creates a privilege to do so only in so far as the condition or

10   restriction is complied with."  *Id.* (citing *Cassinos,* 14 Cal. App. 4th at 1778) (internal quotation

11   marks omitted).

12        As to Markus and Tyler, they are immune from liability per Cal. Gov. Code § 821.8,

13   which provides that a "public employee is not liable for an injury arising out of his entry upon

14   any property where such entry is expressly or impliedly authorized by law."  It is undisputed that

15   Wright and the other responding officers – Markus and Tyler – arrived at the residence because of

16   a call to police regarding a domestic disturbance.  Subsequently Wright shot Mr. Hughey, and

17   afterwards Markus and Tyler entered the residence.  The shooting created exigent circumstances

18   for Markus and Tyler to enter the residence.  *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984);

19   *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

20        This cause of action as stated in the FAC (¶¶ 162–64) makes no specific allegations

21   regarding the other named Defendants, except for Wright.  Defendants' position appears to be

22   that the named officers entered the home at various points after the shooting, as part of an

23   investigation into either the shooting itself or a domestic violence incident.  The Court agrees that,

24   drawing the minimal facts which are pled in favor of Plaintiffs, there are not still not adequate

25   allegations to counter immunity for these Defendants under Cal. Gov. Code § 821.6.  Therefore

26   this claim is dismissed as to the other named Defendants, except Wright.

27        As to Wright, he makes no separate argument against the trespass claim and the motion to

28   dismiss does not argue on his behalf.  Based on the allegations regarding Wright's conduct – that

1    he kicked in the door to Plaintiffs' home and entered it without provocation, and that he shot

2    through the doorway without provocation – Plaintiffs state a claim that Wright engaged in an

3    unauthorized entry.

4           Therefore for the foregoing reasons, this cause of action is dismissed, except against

5    Wright and the City.

6           **Claims 14 and 15: Trespass to Chattels and Conversion**

7           The relevant allegations for the instant claims overlap with the allegations for claim 8

8    (invasion of privacy against Fellows).  Plaintiffs allege that they were unlawfully dispossessed of

9    their laptops and a cellphone without a warrant, resulting in damages.  (FAC ¶¶ 166, 170.)

10          Trespass to chattels "lies where an intentional interference with the possession of personal

11   property has proximately caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559,

12   1566 (1996).  "Conversion is the wrongful exercise of dominion over the property of another.

13   The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

14   property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

15   (3) damages." *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (internal

16   quotation marks omitted).

17          Defendants' primary argument is that they are "immune from liability for their conduct

18   alleged in the [trespass and conversion causes of action] because all of the acts – investigating,

19   obtaining the warrant, searching, seizing, retaining, and even damaging plaintiffs' property –

20   were committed as part of an investigation of crimes leading to prosecution in a judicial

21   proceeding," and thus protected by prosecutorial immunity under Cal. Gov. Code 821.6.  *See*

22   *County of L.A. v. Superior Court*, 181 Cal. App. 4th 218, 230 (2009).  However, drawing the facts

23   in favor of Plaintiffs, the connection of these items to an investigation or prosecution is not

24   definite.

25          Defendants cite *Vallindras v. Massachusetts Bonding & Ins. Co.,* 42 Cal. 2d 149, 153–54

26   (1954) (peace officer acting pursuant to a facially valid order was immune from tort liability);

27   *Barnett v. State Farm General Ins. Co.,* 200 Cal. App. 4th 536, 544–46 (2011) (police who seized

28   marijuana pursuant to warrant and stored it as evidence did not wrongfully deprive owner of

                                                    24

1  possession).  But both of these cases involved conduct authorized by a warrant, not conduct prior

2  to the issuance of a warrant.  Defendants also reference *Bruce v. Sibeck*, 25 Cal. App. 2d 691,

3  696–99 (1938) (game wardens making lawful warrantless arrest were entitled to seize plaintiff's

4  boats and fishing equipment as evidence of illegal fishing).  That case involved items directly

5  relevant to the charge of illegal fishing, of which the defendant was eventually convicted, which

6  is distinguishable from the instant case.

7       Therefore, Plaintiffs adequately state a claim for trespass to chattels and conversion.  At

8  this juncture, the Court restricts the claim to Fellows and the City because there are detailed

9  allegations in the FAC that Fellows was responsible for either seizing or directing the seizure of

10  the equipment, that he was the lead investigator in the case, and that he made use of information

11  ultimately found on the electronic equipment.  (FAC ¶¶ 52–57, 166.)  As to the other named

12  Defendants – Markus, Tyler, Sockman, and Wright – the allegations are that Wright unlawfully

13  entered the residence, that Markus and Tyler "assisted in restraining Mr. Hughey as Fellows

14  seized Plaintiffs' personal equipment," and that Sockman did not return the equipment when it

15  was requested by Mr. Hughey's attorney at the hospital following the shooting.  (FAC ¶¶ 166,

16  37–40.)  The Court does not view these allegations to adequately support the claim that

17  Defendants intentionally interfered with, or wrongfully exercised dominion over, the electronic

18  equipment at issue.  *Thrifty-Tel, Inc.*, 46 Cal. App. 4th at 1566; *Welco Electronics, Inc.,* 223 Cal.

19  App. 4th at 208.

20       **Claims 16 and 17: Negligent Supervision and Negligent Entrustment**

21       Claim 16, Negligent Supervision, is stated against the City, Drummond, McDonald,

22  Sockman, Tyler, Maggiano, Steele, and Delaini.  These Defendants are alleged to have

23  negligently supervised Wright, Markus, and Fellows.  Claim 17, Negligent Entrustment, is stated

24  against the City, Drummond, Sockman, and Tyler for entrusting Wright with a firearm.

25       With respect to liability on the part of the individual Defendants – either for supervising

26  Wright, Markus, and Fellows, or for entrusting Wright with a firearm – the FAC alleges little to

27  no facts explaining how these Defendants were negligent.  Furthermore, "a public employee is

28  not liable for an injury caused by the act or omission of another person."  Cal. Gov. Code § 820.8.

25

1  Plaintiffs' authority on this point, *Fernelius v. Pierce,* 22 Cal. 2d 226, 228 (1943), predates the

2  1963 enactment of section 820.8.  Therefore without more, Plaintiffs do not adequately state a

3  claim against the individual Defendants for negligent supervision or entrustment.

4       With respect to liability on the part of the City, Plaintiffs argue that under *respondeat*

5  *superior*, the City would be liable for the negligent practices of the individual supervisors.  *See*

6  Cal. Gov. Code § 815.2 ("A public entity is liable for injury proximately caused by an act or

7  omission of an employee of the public entity within the scope of his employment if the act or

8  omission would, apart from this section, have given rise to a cause of action against that

9  employee or his personal representative."  "[A]n employer's liability extends to torts of an

10  employee committed within the scope of his employment."  *John R. v. Oakland Unified School*

11  *Dist.*, 48 Cal. 3d 438, 447 (1989).   "This includes willful and malicious torts as well as

12  negligence."  *Id.* (citing *Martinez v. Hagopian* 182 Cal. App. 3d 1223, 1227 (1986)).  However,

13  because there are inadequate facts alleged with respect to the supervisors' liability, whether the

14  City is vicariously liable is moot.

15       Therefore, for the foregoing reasons, claims 16 and 17 are dismissed.

16       **Claim 18: RICO violations, 18 U.S.C. § 1961, *et seq.***

17       Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations

18  ("RICO") Act against all Defendants.  The FAC as pled provides no allegations, specific to each

19  named Defendant, showing that if true the elements of a RICO offense are met, which are: "(1)

20  that an enterprise existed; (2) that the enterprise affected interstate or foreign commerce; (3) that

21  the defendant associated with the enterprise; (4) that the defendant participated, directly or

22  indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendant participated in

23  the enterprise through a pattern of racketeering activity by committing at least two racketeering

24  (predicate) acts."  *U.S. v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995).  Because Plaintiffs do not

25  state facts leading to a plausible claim for relief under RICO, the claim is dismissed.[14]

26  _____

27  [14] Plaintiffs also provide no specific response to Defendants' arguments in opposition, which are: 1) personal injuries
of the type relevant here do not form the basis for a RICO suit; 2) public entities, generally, are not considered

28  "enterprises" under RICO; and 3) government employees cannot be individually liable under RICO solely for
performing their official duties.  (ECF No. 35-1 at 18.)

**Claim 19: Violations under 42 U.S.C. § 1983**

Plaintiffs allege violations under 42 U.S.C. § 1983 against all Defendants, for the activities stated generally in the FAC, which include Defendants: "(a) wrongfully using force against Mr. Hughey; (b) wrongfully using lethal force against Mr. Hughey; (c) unlawful search and seizure of persons and property; (d) false imprisonment of Mr. and Mrs. Hughey; (e) deprivation of equal rights; and (f) civil and criminal conspiracy against Mr. and Mrs. Hughey." (FAC ¶ 186.)

Given the sweeping nature of this claim as stated in the FAC, Plaintiffs are ordered to restate this claim clearly stating which conduct relates to a specified Defendant, and which civil right is violated because of that Defendant's conduct.

## CONCLUSION

Plaintiff Mrs. Hughey's state law claims in the FAC are dismissed. The FAC is otherwise dismissed except that Plaintiff Mr. Hughey states the following claims:

- Assault against the City, Wright, Markus, and Tyler (Claim 1)
- Battery against the City, Wright, Markus, Tyler, and Fellows (Claim 2)
- Negligence against the City and Wright (Claim 3)
- Intentional Infliction of Emotional Distress against the City and Wright (Claim 4)
- Libel against the City and Steele (Claim 5)
- Invasion of Privacy against the City and Fellows (Claim 8)
- False Arrest and False Imprisonment against the City, Wright, Fellows, Sockman, Markus, and Tyler (Claim 12)
- Trespass to Land against the City and Wright (Claim 13)
- Trespass to Chattels and Conversion against the City and Fellows (Claims 14 and 15)

In light of the high degree of liberality afforded to parties seeking amendment in this Circuit, *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960), Plaintiffs are given leave to amend the FAC in full. Plaintiffs shall file and serve an amended complaint within 30 days of entry of this order. Defendants shall file a responsive pleading within 30 days of service

of the amended complaint.

Dated:  July 15, 2015

Troy L. Nunley
United States District Judge